# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

MARIA GEORGINA CRUZADO TORRES,

                                          Plaintiff,

    v.                                                                        6:16-CV-590 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.

---

PETER M. MARGOLIUS, ESQ., for Plaintiff
BENIL ABRAHAM, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance benefits ("DIB") and Supplemental Social Security Income ("SSI") benefits on March 6, 2015, alleging disability beginning January 1, 2015.[1] (Administrative Transcript ("T") at 24, 144-53). The applications were denied initially on June 10, 2015. (T. 89-95). Administrative Law Judge ("ALJ") Robert Wright held a hearing on October 23, 2015, at which plaintiff testified. (T. 41-50). The ALJ held a supplemental hearing on August 4, 2015,

---

[1] At her hearing, plaintiff amended the alleged onset date to June 24, 2014. (T. 54).

at which plaintiff and Vocational Expert ("VE") Connie Standhart testified. (T. 51-66). On November 4, 2015, the ALJ found plaintiff was not disabled. (T. 18-40). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 23, 2016. (T. 1-8).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work

2

activities. If the claimant suffers such an impairment, the third inquiry is
whether, based solely on medical evidence, the claimant has an impairment
which meets or equals the criteria of an impairment listed in Appendix 1 of
the regulations. If the claimant has such an impairment, the
[Commissioner] will consider him disabled without considering vocational
factors such as age, education, and work experience . . . . Assuming the
claimant does not have a listed impairment, the fourth inquiry is whether,
despite the claimant's severe impairment, he has the residual functional
capacity to perform his past work. Finally, if the claimant is unable to
perform his past work, the [Commissioner] then determines whether there
is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

3

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III. FACTS

As of the date of the administrative hearing on August 4, 2015, plaintiff was 35 years old. (T. 54). She resided with her boyfriend and three of her children, ages 12, 4, and 1. (T. 55). She had partial custody of her other two children, ages 17 and 13, who lived with their father. (T. 55, 246). Plaintiff had attended school up to the twelfth grade in regular education classes, but did not graduate. (T. 55). She subsequently obtained her general equivalency diploma ("GED"). (*Id*.).

Plaintiff's past employment included work as a home health aide, customer

4

service associate at a pharmacy, and computer operator at a printing company. (T. 45, 56-57). Her most recent employment, as a machine operator in a manufacturing facility, ended in June 2014. (T. 55). Plaintiff reported that she left this position when vertigo and symptoms related to her depression began to interfere with her ability to perform her work. (T. 56).

Plaintiff was diagnosed with vertigo in July 2014, and testified at her August 4, 2015 hearing that she suffered dizziness and other symptoms approximately twice a week. (T. 62, 227, 308). She also had difficulty gripping and lifting due to pain and tightness in her right hand and thumb. (T. 64, 269). Plaintiff testified at her hearing that she had not sought treatment for her physical impairments for approximately a year, in order to focus on her mental health. (T. 62).

Plaintiff had received mental health treatment since 2014, including multiple emergency room visits. (T. 230, 238-39). At the time of her hearing, she was taking medication for anxiety and depression, and receiving weekly counseling sessions. (T. 57, 59). Plaintiff testified that, in spite of this treatment, she still suffered from daily anxiety attacks, nightmares, and frequent crying attacks. (T. 62-63). She also testified that her mental health impairments and the side effects from her medication made it difficult to concentrate, and prevented her from engaging in activities outside the house. (T. 60-61).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 27-35). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by

5

plaintiff.

## IV. **THE ALJ'S DECISION**

As an initial matter, the ALJ determined that plaintiff met the insured status requirements through June 30, 2019. (T. 26). The ALJ then determined that plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of June 24, 2014. (*Id*.). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: depression, anxiety, right trigger thumb[2], and vertigo. (*Id*.). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 26-28).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform less than the full range of light work. (T. 28-35). Specifically, the ALJ found that plaintiff was limited to work that was unskilled, simple, routine, and low stress, which he defined as having only occasional decision-making, changes in work setting, or interaction with others. (T. 28). Taking plaintiff's vertigo into account, the ALJ also found that plaintiff could not perform any work that involved heights or the operation of moving machinery or a motor vehicle. (T. 28, 31).

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other

---

[2] Trigger thumb, or stenosing tenosynovitis, is caused by inflammation in the protective sheath that surrounds the tendon in the thumb, causing the digit to become stuck in a bent position. http://www.mayoclinic.org/diseases-conditions/trigger-finger/basics/ definition/con-20043819.

6

evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 28). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the frequency, intensity, duration, and limiting effects of those symptoms were not entirely credible in light of the record evidence. (T. 29-30). The ALJ next determined that plaintiff was unable to perform her past relevant work. (T. 35). Relying on the VE testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 35-37). Accordingly, the ALJ determined that plaintiff was not disabled from the onset date through the date of the decision, and denied plaintiff's applications for DIB and SSI. (T. 37).

## V. ISSUES IN CONTENTION

Plaintiff raises the following argument:

(1) The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical evidence. (Pl.'s Br. at 3-5) (Dkt. No. 9).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-12) (Dkt. No. 10). For the following reasons, this court agrees with defendant and will dismiss the complaint.

7

# DISCUSSION

## VI.  RFC EVALUATION

### A.  Legal Standards

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL

3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

  **B.** **Application**

Plaintiff does not challenge the ALJ's assessment of her physical limitations. However, plaintiff argues that the ALJ did not properly weigh the medical evidence regarding her mental impairments, particularly the evidence regarding plaintiff's social functioning and ability to handle stress. (Pl.'s Br. at 4-5). This court disagrees, and concludes that the ALJ's assessment of plaintiff's mental impairments was supported by substantial evidence.

As noted above, the ALJ limited plaintiff to simple, routine, and low-stress tasks. (T. 28-30). In reaching this mental RFC determination, the ALJ gave "significant weight" to portions of consultative examiner Dr. Marvella Bowman's opinion, specifically her conclusions that plaintiff had less than marked limitations in sustaining attention and concentration, keeping a schedule, making appropriate decisions, and completing complex tasks. (T. 34, 234). However, the ALJ gave no weight to Dr. Bowman's opinion that plaintiff had marked limitations in interacting with others and dealing appropriately with stress. (T. 34, 234).

Plaintiff contends that Dr. Bowman's opinions regarding social functioning and stress management demonstrated that plaintiff was unable to perform substantial gainful activity on a sustained basis, and that the ALJ should have assigned greater weight to these conclusions. (Pl.'s Br. at 4-5). However, the ALJ provided several reasons for discounting these portions of Dr. Bowman's opinion. He noted that Dr. Bowman's

9

report described plaintiff's demeanor and responsiveness as "cooperative," and her manner of relating, social skills, and overall presentation as "adequate." (T. 34, 232). Plaintiff demonstrated coherent and goal-directed thought processes during the consultative examination, as well as a full range of speech and thought content. (T. 232). She was able to perform simple calculations, and her difficulty reciting a series of numbers backwards appeared to stem from a difficulty understanding Dr. Bowman's instructions. (T. 233).

The ALJ also noted that Dr. Bowman's restrictive findings with regard to social functioning and stress management were not consistent with the majority of plaintiff's treatment records. (T. 33). Multiple reports described plaintiff as cooperative, oriented to person and place, and relaxed, with intact attention and concentration. (T. 240, 254, 342, 376). Her depression and anxiety showed the greatest improvement when she was consistent with her medication. (T. 284-85, 290, 298, 301, 388, 392, 395). As her treatment progressed, plaintiff reported success in handling family conflicts and other stress through the use of coping skills and techniques that she had learned in counseling. (T. 378, 392, 395).

Finally, the ALJ noted that Dr. Bowman's findings were based upon a single evaluation, and were not supported by plaintiff's documented activities of daily living. (T. 33-34). Plaintiff cared for her three youngest children on a daily basis, and was actively involved in family court proceedings to gain permanent custody of her two older children. (T. 176, 216). She drove, shopped for groceries, and prepared meals on a regular basis. (T. 60-61, 176-79). During a counseling session in July 2015, plaintiff

described cooking for forty-five people at a community charity event. (T. 382). She was also able to travel for extended periods, including driving with her children to Coney Island and traveling with her boyfriend to visit relatives in Connecticut. (T. 408, 413).

Plaintiff notes that the ALJ gave "little probative weight" to a Global Assessment of Functioning ("GAF") score of 50 assessed during an emergency room visit.[3] (T. 245). Plaintiff's brief also accurately references portions of plaintiff's treatment record that reflect symptoms consistent with anxiety and depression. (Pl.'s Br. at 4). However, these references do not demonstrate that the ALJ's RFC determination was unsupported by substantial evidence. At best, plaintiff's complaints regarding the RFC are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about plaintiff's mental impairments. As stated above, it is the province of the ALJ to resolve such conflicts in the evidence. *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008). The ALJ has done so in this case, based upon the treatment record, the medical opinion evidence, and plaintiff's testimony. Therefore, the ALJ's RFC determination that plaintiff could perform less than the full range of light work was supported by substantial evidence.

---

[3] The Global Assessment of Functioning ("GAF") is a 100 point scale. A score of 41-50 indicates "serious symptoms," 51-60 indicates "moderate symptoms," and 61-70 indicates "some mild symptoms." AMERICAN PSYCHIATRIC ASSN., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th Ed. Text Revision 2000) ("DSM-IV-TR"). The use of GAF scores is no longer favored, and this instrumentality has been eliminated from the current Diagnostic and Statistical Manual. *See Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 536 (S.D.N.Y. 2015) (noting that use of GAF has been eliminated, but given that the GAF scale was in use at the time that plaintiff was assessed, there was no error in the ALJ's reliance on the scores).

## VII. STEP FIVE DETERMINATION

Plaintiff did not raise any direct challenge to the ALJ's reliance upon the VE testimony, so the court will only briefly address the issue. One of the ALJ's hypothetical questions to the VE mirrored his RFC determination. (T. 46-47). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.[4]

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: January 23, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[4] The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue,* 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-277.